### In re GREEK MFG. & ENTERPRISING CO.

(District Court E. D. Pennsylvania. February 10, 1909.)

#### No. 2,971.

BANKRUPTCY (§ 188*)—RIGHTS VESTING IN TRUSTEE—PROPERTY LEVIED ON BY BANKRUPT.

A corporation, a few months prior to its bankruptcy, sold and transferred certain property to another, taking a judgment note therefor. Included in the property so transferred was a cash register, which it held under a contract of rental or conditional sale from the manufacturer, and a similar contract was made with the transferee with the bankrupt's knowledge and consent. Not receiving payment, it issued execution on the note and levied on property, including the cash register, which levy was pending at the time of the bankruptcy. *Held* that, whether the contract was one of rental or conditional sale, the reservation of title in the manufacturer was valid between the parties and as against the bankrupt and its trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

In Bankruptcy. On certificate of referee.
See, also, 164 Fed. 211.

George Wentworth Carr, for National Cash Register Co.
Albert L. Möise, for trustee.
T. Henry Walnut and William R. Murphey, for creditors.

J. B. McPHERSON, District Judge. This is a controversy over a fund produced by the sale of a cash register. The machine was sold by the receiver (afterwards the trustee) of the bankrupt company, and the money thus produced is in his hands awaiting the decision of the present dispute. There are two claimants to the fund, namely, the trustee of the bankrupt and the National Cash Register Company;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the latter having been originally the owner of the machine, and asserting that its ownership continued, and could lawfully be asserted, at the time of the sale. The facts are as follows:

In July, 1907, the bankrupt acquired a machine from the National Cash Register Company under a form of agreement whose terms will be set out more fully in another connection. It provided, inter alia, for the payment of certain installments, and after several of these had been paid the bankrupt sold its entire interest in the machine (whatever that interest may have been), together with other property, to Alexander Alexakis, and took from him a judgment note in payment of the purchase price. Alexakis took possession of the machine, both the bankrupt and the register company agreeing thereto, and on November 21st recognized the ownership of the register company by entering into an agreement that was identical in all essential particulars with the instrument to which the bankrupt had been a party. The principal provisions are as follows:

"The National Cash Register Co., Dayton, Ohio:

"Please ship to the undersigned, at * * * Philadelphia, * * * one of your registers. * * * and we agree to lease it from you for the term of six months for the rental of $225. We agree to give you our promissory note for $125, payable in six monthly installments, five of $20 each and one of $25. as collateral security for the payment of said rental. We further agree to pay you $——— forthwith, and $——— upon arrival of the register, as partial security for the fulfilment of this agreement. At the expiration of this lease we agree to surrender to you the said cash register in good condition; you to return to us the amount deposited with you as security as hereinbefore mentioned, provided the terms of this lease have been complied with. The $100 paid by the Greek Manufacturing & Enterprising Company to apply as part rental. We are to have the option, after the expiration of this lease and after surrender of said register, to purchase the same upon the payment to you of the amount deposited as partial security."

The remaining provisions of the agreement need not be quoted. The promissory note referred to was duly executed, dated December 2d, and reads as follows:

"For value received, ——— promise to pay to the order of the National Cash Register Co. (Dayton, Ohio, U. S. A.) one hundred and twenty-five dollars, at Philadelphia office, in six installments, payable as below:

| | | | |
|---|---|---|---|
| One | month after date | | $20 |
| Two | months " " | | 20 |
| Three | " " " | | 20 |
| Four | " " " | | 20 |
| Five | " " " | | 20 |
| Six | " " " | | 25 |

"It is agreed that default in the payment of any of the above installments shall, at the option of the holder hereof, render the unpaid balance of this note due and payable."

In December, 1907, the bankrupt issued execution upon the judgment note given by Alexakis, and levied, inter alia, upon the machine. While the levy was pending, the petition in bankruptcy was filed, and a receiver was appointed. He mistakenly supposed that the machine was the property of the bankrupt, and in that belief offered it for sale. By agreement between the register company and himself, he was allowed to sell it and to retain the proceeds until it should be determined

who was entitled thereto. This question is now presented, and ordinarily it would be fully answered by construing the agreement between Alexakis and the register company. If the court should determine this to be a bailment, the register company would continue to be the owner, and would be entitled to the fund; if the court should find it to be a conditional sale, the machine would be subject to levy as the property of Alexakis under the judgment note given by him to the bankrupt, and the trustee would succeed to the interest that was acquired by the levy. The situation would be precisely the same as if the Greek Company had not been adjudged a bankrupt, but was claiming the fund as a solvent individual by virtue of its execution lien. Alexakis is not a bankrupt, and the lien obtained by the Greek Company's execution was therefore not affected by section 67, or by any other provision of the statute. The case would present the familiar aspect of a dispute over a piece of property that has been levied on in the possession of a debtor, and therefore belongs prima facie to him, but is claimed by a third person as being in reality his property although he has temporarily allowed it to pass into the debtor's possession.

But it will be observed that a peculiar situation exists in the present case, and owing to this situation it is not necessary to construe the agreement of November 21st, and to decide whether it evidences a bailment or a conditional sale. And the reason is this: Upon the undisputed facts it is not open to the bankrupt, or to its trustee, who has succeeded to no more than the bankrupt's rights, to insist that the agreement should be construed. Whether it evidences a bailment or a conditional sale, the transaction was unquestionably good between the register company and Alexakis, and, while it might, no doubt, be questioned by some of the latter's creditors, the legal rule which permits it to be attacked is only at the service of a class of creditors to which the bankrupt does not belong. The rule is founded upon the assumption, which in most cases is justified by the fact, that creditors have been deceived by the debtor's possession of the property in question and have given him credit in the belief that the real ownership corresponds with the apparent ownership. When, therefore, the possession and the apparent ownership are both in the debtor as the result of a contract of conditional sale, the conditional vendor is not permitted in the state of Pennsylvania to set up his real ownership, although it may be protected by his agreement with the debtor, so as to defeat the claims of creditors who have levied upon the property in the debtor's possession. The reason of the rule ceases, and therefore the rule itself is no longer applicable, when it appears that the creditor has not been deceived at all, but has been in full possession of the facts concerning the debtor's apparent title. If he knows that the debtor has come into possession of the property by virtue of a contract which preserves the title and the real ownership of another person, he evidently does not credit the debtor on the faith of the latter's apparent ownership, and there is no longer any ground for disabling the real owner from insisting upon his title in spite of the fact that the debtor (and conditional vendee) has been allowed to have

the possession. In the present case the agreement of November 21st between the register company and Alexakis was made with the knowledge and consent of the bankrupt, by whom the nature of the agreement was well understood. The bankrupt knew that the possession of Alexakis was taken under a contract that was either a bailment or a conditional sale, and in either event that the real title and ownership had not passed to him. With such knowledge the bankrupt's judgment note against Alexakis was given and accepted, and I am unable, therefore, to see how it is possible to disregard this undoubted fact, and to permit the bankrupt to enjoy the rights that belong only to a creditor who was ignorant of the full scope of the transaction by which Alexakis acquired possession of the property in dispute. The bankrupt's knowledge concerning the title of Alexakis to the register is the knowledge of the trustee, and both, I think, are as much bound to respect the agreement of November 21st as was Alexakis himself.

The order of the referee is reversed, and the trustee is now directed to pay over to the National Cash Register Company the sum of $100, the proceeds of the machine in question.